

NUMBER 13-14-00347-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

## IN RE STATE FARM LLOYDS, RICHARD FREYMANN, AND NATHAN BURRIS

## On Petition for Writ of Mandamus.

## MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Perkes and Longoria**
**Memorandum Opinion by Justice Longoria[1]**

By petition for writ of mandamus, relators State Farm Lloyds ("State Farm") and its employees Richard Freymann and Nathan Burris seek to compel the trial court to abate the underlying insurance dispute until sixty days after the real party in interest, Gilma Trigo, provides presuit notice as required by the Texas Insurance Code. *See* TEX. INS. CODE ANN. § 541.154 (West, Westlaw 2013 through 3d C.S.). Relators contend that the trial court erred in refusing to abate the case when Trigo did not provide them with timely

---

[1] *See* TEX. R. APP. P. 52.8(d) ("When denying relief, the court may hand down an opinion but is not required to do so."); *id.* R. 47.4 (distinguishing opinions and memorandum opinions).

presuit notice sixty days prior to filing suit and the presuit notice that Trigo belatedly sent was insufficient because it failed to segregate the amount of money she sought as damages from the amount of money she sought for her attorney's fees. We deny the petition for writ of mandamus.

## I. BACKGROUND

This petition for writ of mandamus is the first of almost forty original proceedings arising from litigation over property damage claims made against State Farm as a result of hail storms which hit the Rio Grande Valley in spring of 2012.[2]  Pursuant to a standing pretrial order, all hail litigation filed in Hidalgo County that involves insurance disputes arising out of the hail storms that struck Hidalgo County on or about March 29, 2012 and April 20, 2012, are handled by consolidated pretrial courts.  This is one such case.  This original proceeding arises from *Gilma Trigo v. State Farm Lloyds, Richard Freymann, and Nathan Burris*, filed in trial court cause number C-1629-14-I in the 389th District Court of Hidalgo County, Texas.  The respondent is the Honorable Rose Guerra Reyna, the Presiding Judge of the 206th District Court of Hidalgo County, Texas, who issued the pretrial ruling at issue herein.

Trigo's property, located at 1217 S. 1 ½ Street, McAllen, Texas 78501, was damaged by the April 20, 2012 hail storm.  She filed an insurance claim with State Farm alleging that the storm caused damage to her roof, ceilings, walls, insulation, electrical

---

[2] In each of the separate petitions for writ of mandamus, which present virtually identical legal issues and similar factual backgrounds, State Farm Lloyds and its employees contend that the trial court abused its discretion in denying their pleas in abatement because the real parties in interest failed to provide them with presuit notice as required by the Texas Insurance Code.  In each of these original proceedings, the real parties in interest did not provide relators with written notice more than 60 days prior to filing suit, and the written notice that the real parties ultimately provided to relators did not segregate the damages sought from the attorney's fees.  Of the original proceedings filed to date, two have settled.  *See In re State Farm Lloyds*, No. 13-14-00355-CV, 2014 WL 3889101, at *1 (Tex. App.—Corpus Christi Aug. 4, 2014, orig. proceeding) (mem. op. per curiam); *In re State Farm Lloyds*, No. 13-14-00350-CV, 2014 WL 3542085, at *1 (Tex. App.—Corpus Christi July 16, 2014, orig. proceeding) (mem. op. per curiam).

wiring, and fence. On May 7, 2012, adjuster Nathan Burris inspected Trigo's property and estimated the covered damage to be $12,457.18. After applying the deductible of $3,450.00 and depreciation of $2,920.02, relator paid Trigo $6,087.16 on May 7, 2012. Trigo thereafter obtained an estimate to repair her roof for $9,150.00 from R.T. Lopez Roofing Company, had the roof repaired, and submitted the invoice to State Farm. State Farm made no additional payments to Trigo.

On March 7, 2014, Trigo filed suit against State Farm, Burris, and Freymann, who oversaw State Farm's hail operations in the Rio Grande Valley and was responsible for training, overseeing, and supervising claim representatives and adjusters. She brought causes of action for violations of the Texas Insurance Code, fraud, conspiracy to commit fraud, breach of contract, and breach of the duty of good faith and fair dealing. The petition asserted that due to inadequate training and procedures, relators conducted a substandard and inadequate inspection of Trigo's property. Trigo alleged that Burris's report and evaluation failed to include all of the property damage that was caused by the storm and excluded interior water damage, damages to the exterior windows, and damages to the exterior lighting. Trigo further alleged that Burris undervalued the damages that he did find by underpricing the cost of materials required for necessary repairs and by incorrectly applying the material sales tax. Trigo alleged that, as a result of relators' wrongful acts and omissions, she was "considerably underpaid on her claim and has suffered damages," and that relators' conduct has "caused a delay in [her] ability to fully repair her home which has resulted in additional damages." The petition did not make a specific monetary demand but instead sought a range of damages of "over $200,000 but not more than $1,000,000." Prior to filing suit, Trigo did not send State Farm a presuit notice letter.

3

On April 21, 2014, relators filed an answer and a plea in abatement based on (1) Trigo's failure to provide presuit notice at least sixty days prior to filing suit in violation of section 541 of the Texas Insurance Code, and (2) Trigo's failure to separate the amount of her actual damages from the amount of her attorney's fees in the notice that she ultimately sent.

On April 29, 2014, Trigo sent relators a demand letter entitled "Confidential Settlement Negotiations Offer to Compromise Pursuant to TEX. R. EVID. 408." The letter included specific factual allegations regarding Trigo's complaints against relators, identified alleged violations of the Texas Insurance Code, and delineated the alleged damages to Trigo's home. The letter offered to settle Trigo's claims for a lump sum of $125,000 which "includes the amount of actual damages and expenses; including attorney's fees reasonably incurred in asserting the claim made basis [sic] of this lawsuit."

On May 1, 2014, Trigo filed a response to the plea in abatement. Trigo contended that the plea should be denied because: (1) the court had previously denied similar requests for abatement on June 19, 2013 in the consolidated pretrial hail proceedings; (2) statutory notice was not required because the action had to be filed to prevent the statute of limitations from expiring; (3) Trigo sent a notice letter on April 29, 2014 and the abatement period would expire on June 29, 2014, thus rendering the abatement issue moot; and (4) the notice letter and the petition met the "fairly low threshold" that a notice letter must meet.

On May 9, 2014, relators filed a supplemental verified plea in abatement. On May 20, 2014, the trial court held a hearing on relators' plea in abatement. On May 28, 2014, the trial court rendered an order denying the plea. This original proceeding ensued.

4

By two issues, relators contend that the trial court abused its discretion by refusing to abate the case when: (1) Trigo failed to provide the presuit notice required by the Texas Insurance Code more than sixty days prior to filing suit and no abatement, stay, or suspension of the case has occurred since the complaint was filed; and (2) Trigo's subsequent notice letter failed to separate or segregate the amount of damages she claimed separately from the amount of attorney's fees she sought. Other than the failure to segregate attorney's fees from damages, relators do not contend that the notices were otherwise insufficiently specific.

The Court requested and received a response to the petition for writ of mandamus from Trigo. Trigo asserts, inter alia, that the notice she provided to relators on April 29, 2014 met the threshold requirements of the Texas Insurance Code, and because relators have had sufficient notices in their possession for more than sixty days, the relators are not entitled to abatement and mandamus relief.[3]

## II. STANDARD OF REVIEW

To be entitled to the extraordinary relief of a writ of mandamus, the relator must show that the trial court abused its discretion and that there is no adequate remedy by appeal. *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135–36 (Tex. 2004) (orig. proceeding). The relator has the burden of establishing both prerequisites to mandamus relief, and this burden is a heavy one. *In re CSX Corp.*, 124 S.W.3d 149, 151 (Tex. 2003)

---

[3] Trigo contends that the case has been abated under the Hidalgo County standing pretrial order since the defendants filed their answer to her lawsuit on April 21, 2014. The pretrial order provides that the case is abated "[i]mmediately upon the filing of the Residential Insurance Carrier's Original Answer" until thirty days after unsuccessful mediation or "notice by any party that the party desires to unilaterally end the abatement period." However, we note that the standing pretrial order also provides that the "abatement period will not apply to any statutory deadline . . . that may apply under any statutory code of law." Accordingly, we do not consider this abatement period as relevant to this case. Moreover, based on our review of the record, Trigo did not make this argument to the trial court, and accordingly, we do not consider it here. *See In re Advance Payroll Funding, Inc.*, 254 S.W.3d 710, 714 (Tex. App.—Dallas 2008, orig. proceeding) (holding that arguments not presented to the trial court will not be considered in a petition for writ of mandamus).

5

(orig. proceeding). A trial court abuses its discretion when it acts arbitrarily, unreasonably, or without reference to any guiding rules or principles. *In re Gen. Elec. Co.*, 271 S.W.3d 681, 685 (Tex. 2008) (orig. proceeding); *Walker v. Packer*, 827 S.W.2d 833, 839 (Tex. 1992) (orig. proceeding). We assess the adequacy of an appellate remedy by balancing the benefits of mandamus review against the detriments. *In re State*, 355 S.W.3d 611, 614–15 (Tex. 2011) (orig. proceeding); *In re Team Rocket, L.P.*, 256 S.W.3d 257, 262 (Tex. 2008) (orig. proceeding). Because this balance depends heavily on circumstances, it must be guided by the analysis of principles rather than the application of simple rules that treat cases as categories. *In re McAllen Med. Ctr., Inc.*, 275 S.W.3d 458, 464 (Tex. 2008) (orig. proceeding). We evaluate the benefits and detriments of mandamus review and consider whether mandamus will preserve important substantive and procedural rights from impairment or loss. *In re Prudential Ins. Co. of Am.*, 148 S.W.3d at 136.

When a claimant fails to give a statutory notice that is a prerequisite to filing suit and the trial court denies the defendant's timely request for abatement, that defendant is entitled to seek review of the court's denial by mandamus. *See Hines v. Hash*, 843 S.W.2d 464, 469 (Tex. 1992) (concluding there is no adequate remedy by appeal for the failure to give statutory notice under the Texas Deceptive Trade Practices Act);[4] *Am. Online, Inc. v. Williams*, 958 S.W.2d 268, 271 (Tex. App.—Houston [14th Dist.] 1997, no

---

[4] Both the Texas Insurance Code and the Texas Deceptive Trade Practices Act require a plaintiff to give sixty days' notice to a defendant before filing suit. *See* TEX. INS. CODE ANN. § 541.154(a) (West, Westlaw through 2013 3d C.S.); TEX. BUS. & COM. CODE ANN. § 17.505(a) (West, Westlaw through 2013 3d C.S.). If a person against whom an action under these statutes is brought does not receive the required pre-filing notice, he or she may file a plea in abatement, and the trial court must abate if the claimant did not provide the required notice. *See* TEX. INS. CODE ANN. § 541.155(a),(b) (West, Westlaw through 2013 3d C.S.); TEX. BUS. & COM. CODE ANN. § 17.505(c),(d) (West, Westlaw through 2013 3d C.S). Cases involving the DTPA notice provision are instructive on whether the requirements of the Texas Insurance Code notice provision have been met. *See Dosekun v. State Farm Lloyds*, 833 F. Supp. 2d 662, 664 n.1 (S.D. Tex. 2011); *see also In re Cypress Tex. Lloyds*, No. 13-11-00248-CV, 2011 WL 3631314, at *4 (Tex. App.—Corpus Christi Aug. 15, 2011, orig. proceeding) (mem. op.).

pet.) (same); *see also In re Cypress Tex. Lloyds*, No. 13-11-00248-CV, 2011 WL 3631314, at *2 (Tex. App.—Corpus Christi Aug. 15, 2011, orig. proceeding) (mem. op.) (concluding there is no adequate remedy by appeal for the failure to give statutory notice under the Texas Insurance Code); *In re Liberty Mut. Fire Ins. Co.*, No. 14-09-00876-CV, 2010 WL 1655492, at *5 (Tex. App.—Houston [14th Dist.] Apr. 27, 2010, orig. proceeding) (mem. op.) (same); *In re Behr*, No. 04-05-00895-CV, 2006 WL 468001, at *3 (Tex. App.— San Antonio Mar. 1, 2006, orig. proceeding) (mem. op.) (same).

### III.  THE PRESUIT NOTICE REQUIREMENT

Under the Texas Insurance Code, "[a] person seeking damages in an action against another person under this subchapter must provide written notice to the other person not later than the 61st day before the date the action is filed."  TEX. INS. CODE ANN. § 541.154(a).  The notice must advise the recipient of "the specific complaint" and "the amount of actual damages and expenses, including attorney's fees reasonably incurred in asserting the claim against the other person."  *Id.* § 541.154(b); *see Richardson v. Foster & Sear, LLP*, 257 S.W.3d 782, 786 (Tex. App.—Fort Worth 2008, no pet.); *Williams v. Hills Fitness Ctr., Inc.*, 705 S.W.2d 189, 192–93 (Tex. App.— Texarkana 1985, writ ref'd n.r.e.).

The purpose of the sixty day notice requirement under the Texas Insurance Code is to "discourage litigation and encourage settlements" of consumer complaints. *Kennard v. Indianapolis Life Ins. Co.*, 420 F. Supp. 2d 601, 609 (N.D. Tex. 2006); *Hines*, 843 S.W.2d at 469 (concerning notice under the DTPA).  Presuit notice provides the opportunity to limit damage exposure through an offer of settlement as contemplated by sections 541.156 through 541.159 of the Texas Insurance Code.  *See* TEX. INS. CODE ANN. §§ 541.156–.159 (West, Westlaw through 2013 3d C.S.); *see also In re Behr*, 2006

WL 468001, at *3 (stating that "without pre-suit notice, Behr is denied his right to limit his damage exposure through an offer of settlement").

If the policy holder fails to provide the required notice, the Texas Insurance Code allows the defendant insurer to abate further trial court proceedings. The defendant insurer "may file a plea in abatement not later than the 30th day after the date the person files an original answer in the court in which the action is pending." TEX. INS. CODE ANN. § 541.155(a) (West, Westlaw through 2013 3d C.S.). If the plea is verified and alleges that the defendant did not receive the required notice, and the plea is not controverted by an affidavit filed before the eleventh day after the plea in abatement is filed, then abatement of the action is automatic and does not require a court order. *Id.* § 541.155(c) (West, Westlaw through 2013 3d C.S.). The statute provides that if the plaintiff disputes abatement, "[t]he court shall abate the action if, after a hearing, the court finds that the person is entitled to an abatement because the claimant did not provide the notice as required by section 541.154." *Id.* § 541.155(b) (West, Westlaw through 2013 3d C.S.). In either case, "[a]n abatement . . . continues until the 60th day after the date notice is provided in compliance with section 541.154." *Id.* § 541.155(d) (West, Westlaw through 2013 3d C.S.).

## IV. ANALYSIS

Relators contend that the trial court abused its discretion by failing to abate the underlying trial court proceedings because Trigo failed to provide presuit notice more than sixty days prior to filing suit and no abatement, stay, or suspension of the case has occurred since the case was filed. Relators also allege that the trial court abused its discretion in refusing to abate because the notice that Trigo ultimately sent failed to separate or segregate the amount that she was seeking for damages from the amount

sought for attorney's fees. In connection with these issues, relators contend that mandamus relief is warranted because Trigo cannot avoid abatement by waiting until the statute of limitations is about to expire before filing suit and because she did not plead and prove that presuit notice was rendered "impracticable" by the impending expiration of the limitations period.

## A. LIMITATIONS

We first address relators' contention that Trigo was not excused from complying with the statutory presuit notice requirement by virtue of an impending statute of limitations. In the trial court, Trigo argued that the presuit notice requirement was excused because the statute of limitations rendered giving notice impracticable. This argument is premised on one of the statutory exceptions to the presuit notice requirement in the Texas Insurance Code. *See* TEX. INS. CODE ANN. §§ 541.154(c), 541.155(e) (West, Westlaw through 2013 3d C.S.). Under the statute, notice is "not required" if giving notice is "impracticable" because the action "must be filed to prevent the statute of limitations from expiring," or "is asserted as a counterclaim." *Id.* § 541.154(c). However, in order to qualify for the exception to the notice requirement because of an impending statute of limitations, a plaintiff must plead and offer some proof that the giving of notice was "rendered impracticable" by the impending expiration of the limitations period. *Winkle Chevy-Oldsmobile-Pontiac, Inc. v. Condon*, 830 S.W.2d 740, 745 (Tex. App.—Corpus Christi 1992, writ dism'd); *How Ins. Co. v. Patriot Fin. Servs., Inc.*, 786 S.W.2d 533, 538 (Tex. App.—Austin 1990), *overruled on other grounds by Hines*, 843 S.W.2d at 469; *see also In re Cypress Tex. Lloyds*, 2011 WL 3631314, at *5; *Perez v. Nationwide Prop. & Cas. Ins. Co.*, No. H–10–5224, 2011 WL 846077, at **5–6 (S.D. Tex. Mar. 8, 2011); *Lewis v. Nationwide Prop. & Cas. Ins. Co.*, No. H–10–4950, 2011 WL

845952, at **5–6 (S.D. Tex. Mar. 8, 2011); *Christopher v. Nationwide Cas. & Prop. Co.*, No. 10–CV–3797, 2011 WL 285143, at *2 (S.D. Tex. Jan. 25, 2011); *Cleo Bustamante Enters., Inc. v. Lumbermens Mut. Cas. Co.*, No. Civ. A. SA-05-CA0433, 2005 WL 1586994, at *1 (W.D. Tex. June 30, 2005).

Based upon the applicable standard, an assertion of a "genuine belief" that limitations might expire does not constitute the pleading and proof required to establish the statutory limitations exception to the presuit notice requirement. *See, e.g., Leon v. Allstate Tex. Lloyd's*, No. H–10–3574, 2011 WL 2193365, at **2–3 (S.D. Tex. June 6, 2011) (holding that the claimant's assertion that the "statute of limitations cannot be precisely determined" was insufficient to show limitations rendered presuit notice impracticable); *Shaheen v. Allstate Tex. Lloyd's*, No. H–10–4580, 2011 WL 845927, at **2–3 (S.D. Tex. Mar. 8, 2011) (holding that the claimant's argument that the statute of limitations "cannot be precisely determined" and "limitations may have foreclosed Plaintiffs' claims" did not constitute pleading and proof that limitations rendered presuit notice impracticable); *Ross v. Nationwide Ins. Co.*, No. H–10–4076, 2011 WL 11201, at *3 (S.D. Tex. Jan. 3, 2011) (holding that the claimant's assertion that determining the statute of limitations was a "moving target" because it depended on different facts, such as when the claim was denied or whether the policy contained a limitations provision, and thus the "safest and most logical bet" was to proceed with suit, did not constitute pleading and proof that limitations rendered presuit notice impracticable); *Balboa v. Allstate Tex. Lloyd's*, No. H–10–3634, 2010 WL 5419050, at *3 (S.D. Tex. Dec. 23, 2010) (holding that assertions that the statute of limitations could not be precisely determined was not sufficient to show that limitations rendered presuit notice impracticable).

10

In this case, Trigo generally asserted that statutory notice was not required because the action had to be filed to prevent the statute of limitations from expiring. According to Trigo, "the statute of limitations on Plaintiff's claims against defendants could have run as early as April 20, 2014, or very soon thereafter." Although Trigo's response to the plea in abatement is supported by a verification, it merely states that "each statement of fact related to the dates of filing and receipt of the pleadings, letters and motions" in the response was within the affiant's personal knowledge and true and correct. Trigo did not otherwise offer evidence in support of her allegations regarding the imminent expiration of the statute of limitations. We conclude that, without more, Trigo has not presented pleading or proof that the statute of limitations rendered the statutory presuit notice impracticable. *See Winkle Chevy-Oldsmobile-Pontiac, Inc.*, 830 S.W.2d at 745; *How Ins. Co.*, 786 S.W.2d at 538. Accordingly, we conclude that the limitations exception to the notice requirement did not excuse Trigo from providing presuit notice in the instant case.

## B. TIMING OF NOTICE

Relators contend that the plaintiffs' failure to send presuit notice more than sixty days in advance of filing the action entitles them to a mandatory abatement period. In short, relators contend that untimely presuit notice is insufficient. Relators assert that Trigo's failure to provide notice of her claims prior to filing suit prejudiced relators and deprived them of their right to engage in productive settlement talks. *See Hines*, 843 S.W.2d at 469 (stating that the initiation of litigation without notice "may polarize the parties and prejudice their discussions").

Relators' contention that untimely notice requires automatic abatement has already been rejected by the courts that have considered this argument. In considering

11

this same argument under the Texas Deceptive Trade Practices Act, the Texas Supreme Court concluded that if the policy holder provides notice for a period shorter than 60 days before filing suit and the suit is automatically abated, a court does not need to "formally grant another sixty-day abatement" if more than 60 days have passed since the policy holder provided notice. *See In re Alford Chevrolet–Geo*, 997 S.W.2d 173, 178 (Tex. 1999) (orig. proceeding) (upholding trial court's decision that formal abatement was unnecessary even though the plaintiffs failed to provide notice 60 days before filing their DTPA suit because the suit was automatically abated and "by the time [the trial court] issued its ruling, more than sixty days had passed since Plaintiffs sent their notices"); *Kennard*, 420 F. Supp.2d at 610; *see also Smith & White Health Plan, Inc. v. Ruffino*, No. 14-94-00039-CV, 1994 WL 107286, at *2 (Tex. App.—Houston [14th Dist.] Mar. 31, 1994, orig. proceeding) (concluding that the plea in abatement was moot under the DTPA where the appellate court had ordered the underlying proceedings stayed in excess of sixty days and "[c]onsequently, the proceedings have for all intents and purposes been abated").

In accordance with overwhelming majority of Texas cases construing the presuit notice requirement in the DTPA, we have likewise concluded that a presuit letter sent after the deadline, or even after suit has been filed, is sufficient to trigger the abatement period under the Texas Insurance Code. *In re Cypress Tex, Lloyds*, 2011 WL 3631314, at *9; *see also Encompass Office Solutions, Inc. v. Ingenix, Inc.*, 775 F. Supp. 2d 938, 960 (E.D. Tex. 2011); *see also Perez*, 2011 WL 846077, at *5; *Lewis*, 2011 WL 845952, at *5; *Ross*, 2011 WL 11201, at *3; *Rubio v. Allstate Tex. Lloyd's*, No. H-10-3058, 2010 WL 5232949, at **1–2 (S.D. Tex. Dec. 16, 2010). Under such circumstances, some courts have denied the motions to abate as moot where late notice was sent but more than sixty days had passed. *See, e.g., Chinese Civil Ctr. v. Catlin Specialty Ins. Co.*, No.

12

H-10-4098, 2011 WL 1806599, at *2 (S.D. Tex. May 11, 2011); *Lopez v. Allstate Tex. Lloyd's*, No. H-10-4685, 2011 WL 742602, at **2–3 (S.D. Tex. Feb. 23, 2011).[5]

Following the Texas Supreme Court's pronouncement of the law pertaining to notice under the DTPA in *In re Alford Chevrolet–Geo*, and our decision in *In re Cypress Texas Lloyds*, we conclude that notice sent after the statutory deadline is sufficient to trigger the abatement period. *See In re Alford Chevrolet–Geo*, 997 S.W.2d at 178; *In re Cypress Tex. Lloyds*, 2011 WL 3631314, at *9. Accordingly, we next consider whether Trigo's notice met the statutory notice requirements under the insurance code insofar as it failed to segregate the amount of money sought as damages from the amount of money sought for attorney's fees.

## C. SUFFICIENCY OF NOTICE

The Texas Insurance Code requires that presuit notice include basic information, including the "specific complaint" and the "amount of actual damages and expenses, including attorney's fees reasonably incurred in asserting the claim against the other person." TEX. INS. CODE ANN. § 541.154(b)(1),(2). Texas courts interpreting the statute or the similar provision in the Texas Deceptive Trade Practices Act have held that a notice letter containing specific factual allegations supporting the causes of action, or at least enough information to imply those facts, satisfies the notice requirement. *See Richardson*, 257 S.W.3d at 788 (stating that the notice requirement under the DTPA sets a "fairly low threshold"); *see also In re Cypress Tex. Lloyds*, 2011 WL 3631314, at *6; *Lester v. Logan*, 893 S.W.2d 570, 573 (Tex. App.—Corpus Christi 1994, writ denied);

---

[5] In contrast, a small minority of courts appear to hold that a demand letter sent after the statutory deadline cannot serve as notice because it is not sent within the statutory period of time. *See, e.g., Little v. Allstate Tex. Lloyd's*, No. 4:10-cv-00939, 2010 WL 2612639, at *2 (S.D. Tex. June 29, 2010); *Nichols v Nationwide Prop. & Cas. Ins. Co.*, No. H-10-0824, 2010 WL 1576694, at *2 (S.D. Tex. Apr. 20, 2010); *Boone v. Safeco Ins. Co. of Ind.*, No. H-09-1613, 2009 WL 3063320, at *3 (S.D. Tex. Sept. 22, 2009).

*Village Mobile Homes, Inc. v. Porter*, 716 S.W.2d 543, 547 (Tex. App.—Austin 1986, writ ref'd n.r.e.); *Williams*, 705 S.W.2d at 191–93. An informative discussion regarding the former notice provision of the DTPA explains the competing considerations applied by a court in considering whether presuit notice is effective:

> The legislative direction to the courts in Section 17.44 to construe and apply the provisions of the Act in such way as to promote the Act's underlying purposes tempers the provision of Section 17.50A(a) to a requirement that advice as to actual damages and attorney's fees be as accurate and informative as the consumer can reasonably make it under the circumstances of the case. An underlying purpose of Section 17.50A(a) is to encourage settlements by affording a potential defendant an opportunity to limit damages and expense by making a settlement offer. This section confers a valuable right upon a potential defendant which should not be impaired by doubtful construction. Neither should form be allowed to prevail over substance; that is to say, that a harmless failure or deficiency in notice should not be allowed to deprive an injured person from prosecuting a claim. The sufficiency of notice of a specific complaint may properly be determined by looking to facts indisputably known to the potential defendant. . . . The Center could not have been uncertain or in doubt as to the specific complaint, the injury, the monetary damage, attorney's fees or expense then claimed. The notice letter combined with what was unquestionably known to the Center substantially complied with the purposes and requirements of Section 17.50A(a).

*Williams,* 705 S.W.2d at 193.

In this case, relators do not contend that Trigo's notice is insufficient in any manner other than its failure to segregate the amounts demanded for damages and attorney's fees. Relators argue that Trigo's demand fails to meet the statutory presuit notice requirement because "each category of damages must be provided separately, rather than as one lump sum damage request, and each category of damages must be supported by sufficient factual information to evaluate the amounts demanded," but relators cite no persuasive or controlling case authority in support of their position. Instead, relators argue that "the requirement that plaintiffs segregate their damages demand from their attorneys' fee demand is the only plausible interpretation of Section

14

541.145, when read in conjunction with Section 541.157." In short, relators contend that segregation of damages from attorney's fees is compelled by statutory construction.

In construing a statute, our primary objective is to ascertain the Legislature's intent, and we do that, if possible, through the words the Legislature selected. *Union Carbide Corp. v. Synatzske*, No. 12-0617, 2014 WL 2994437, at *8 (Tex. July 3, 2014); *City of Rockwall v. Hughes*, 246 S.W.3d 621, 625 (Tex. 2008). We derive the Legislature's intent from the statute as a whole and not by reading individual provisions in isolation. *Tex. Mut. Ins. Co. v. Ruttiger*, 381 S.W.3d 430, 454 (Tex. 2012). We use definitions prescribed by the Legislature and any technical or particular meaning the words have acquired. TEX. GOV'T CODE ANN. § 311.011(b) (West, Westlaw through 2013 3d C.S.). Otherwise, we construe the statute's words according to their plain and common meaning, unless a contrary intention is apparent from the context, or unless such a construction leads to absurd results. *City of Rockwall*, 246 S.W.3d at 625. "It is a rule of statutory construction that every word of a statute must be presumed to have been used for a purpose [and] we believe every word excluded from a statute must also be presumed to have been excluded for a purpose." *See Cameron v. Terrell & Garrett, Inc.*, 618 S.W.2d 535, 540 (Tex. 1981); *see also City of Rockwall*, 246 S.W.3d at 628.

As stated previously, Texas Insurance Code section 541.154 provides that the "prior notice of action" must advise the other person of "the specific complaint" and "the amount of actual damages and expenses, including attorney's fees reasonably incurred in asserting the claim against the other person." TEX. INS. CODE ANN. § 541.154. In contrast, section 541.157 provides the required contents of a settlement offer and states:

> A settlement offer made by a person against whom a claim under this subchapter is pending must include an offer to pay the following amounts, separately stated:

(1) an amount of money or other consideration, reduced to its cash value, as settlement of the claim for damages; and

(2) an amount of money to compensate the claimant for the claimant's reasonable and necessary attorney's fees incurred as of the date of the offer.

*Id.* § 541.157 (West, Westlaw through 2013 3d C.S.). A settlement offer is rejected unless "both parts" of the offer required under this section are accepted within thirty days. *See id.* § 541.158 (West, Westlaw through 2013 3d C.S.).

Relators contend that "if plaintiffs do not state their claimed damages separately from their demanded attorneys' fees, defendants cannot make the settlement offer contemplated by Section 541.157." Relators "should not be put in the position of speculating how [Trigo] calculated her alleged damages, or need to rely on conjecture or guessing." While we do not disagree with relators that a detailed demand letter facilitates potential settlement of a claim, we do not agree that the fact that any settlement offer must segregate damages from attorney's fees compels the conclusion that a prior notice of suit must also segregate damages and attorney's fees.

First, in examining the plain language of the statute, section 541.154 refers to "the amount of actual damages and expenses, including attorney's fees." The statute utilizes the singular "amount," rather than "amounts" in describing the requirements for prior notice of suit. *Id.* § 541.154. In contrast, section 541.157 refers to the plural "amounts" that are "separately stated" for attorney's fees and damages. *Id.* § 541.157. We presume that the Legislature intended to omit the requirement that the amounts be "separately stated" from section 541.154. *See Cameron, Inc.*, 618 S.W.2d at 540; *see also City of Rockwall*, 246 S.W.3d at 628.

16

Second, in examining the statute in its entirety, the requirement that a settlement offer include "amounts" that are "separately stated" for damages and attorney's fees is a necessary prerequisite to the effectuation of section 541.159, which utilizes the settlement offer to cap the potential damages and attorney's fees that a claimant might receive if the plaintiff rejects the settlement offer and is ultimately awarded the same, substantially the same, or less than the settlement offer by the trier of fact. *See* TEX. INS. CODE ANN. § 541.159 (West, Westlaw through 2013 3d C.S.). Specifically, if the claimant rejects the settlement offer, and, after liability is determined, "the court finds the amount stated in the settlement offer for damages is the same as, substantially the same as, or more than the amount of damages found by the trier of fact," the claimant may not recover "any amount in excess of the lesser of . . . the amount of damages stated in the offer . . . or the amount of damages found by the trier of fact." *See id.* § 541.159(a). If damages are limited in accordance with this section, "the court shall determine reasonable and necessary attorney's fees to compensate the claimant for attorney's fees incurred before the date and time the rejected settlement offer was made." *Id.* § 541.159(b). "If the court finds that the amount stated in the offer for attorney's fees under Section 541.157(2) is the same as, substantially the same as, or more than the amount of reasonable and necessary attorney's fees incurred by the claimant as of the date of the offer, the claimant may not recover any amount of attorney's fees in excess of the amount of fees stated in the offer." *Id.* Thus, the statute requires "separately stated" amounts of money for damages and attorney's fees in order to effectively limit damages and attorney's fees in the circumstances prescribed. By contrast, separately stated claims for damages and attorney's fees is not required to fulfil the purpose of the presuit notice requirement.

17

Based on the foregoing, we reject relators' argument that statutory construction compels the conclusion that claimants must segregate elements of damages and attorney's fees in their written notice under section 541.154. Had the Legislature intended to require a claimant to separately state the amounts of actual damages and attorney's fees in the prior notice of suit, it could and would have utilized the same language as it used to delineate the required contents of settlement offers.

## V. CONCLUSION

In the instant case, Trigo's April 29, 2014 notice letter to relators included her specific complaints against relators and the amount of actual damages and expenses, including attorney's fees, which she sought in asserting her claims. TEX. INS. CODE ANN. § 541.154(b)(1),(2). While relators contend that the damages and attorney's fees must be separately itemized, they cite no authority in support of this proposition, and the plain language of the statute indicates otherwise. Thus, the notice provided by Trigo met the threshold requirements of the Texas Insurance Code. Because more than sixty days have passed since notice was provided, no further abatement is required. We note in this regard that the purposes of the abatement period, that is to facilitate settlement, are reinforced by the mandatory abatement provided by the Hidalgo County pretrial order concerning hail cases. Accordingly, having examined and fully considered the petition for writ of mandamus and the response, we LIFT the stay that was previously imposed in this cause and we DENY the petition for writ of mandamus. *See* TEX. R. APP. P. 52.8(a).

NORA L. LONGORIA
JUSTICE

Delivered and filed the
27th day of August, 2014.

18